## 28665.  JONES *v*. THE STATE.

DECIDED FEBRUARY 13, 1941.

*Stevens & Stevens,* for plaintiff in error.

*W. Inman Curry, solicitor,* contra.

GARDNER. J.  This defendant was tried in the city court of Richmond County on an accusation which charged her with a misdemeanor, in that the defendant operated and maintained "a tourist camp without having secured the permission of the board of commissioners of roads and revenues of Richmond County, Georgia, for that the said defendant, in the county aforesaid, on the 28 day of February in the year of our Lord, one thousand, nine hundred and thirty-nine, with force and arms did then and there, by herself, servants and agents, for money and profit, establish, maintain, and operate a tourist camp outside the limits of an incorporated town or city in the County of Richmond and State of Georgia, which said County of Richmond has a population of more than 57,000 according to the last Federal census.  The said establishing, maintaining, and operating of said tourist camp was done without securing the permission of the commissioners of roads and revenues of Richmond County, the authority in charge of said

county, contrary to the laws of said State, the good order, peace and dignity thereof.".

Before pleading to the merits of the charge, the defendant moved to quash the accusation and attacked its sufficiency by demurrer, pleading five grounds as follows: "(1) That said accusation does not set forth any offense against this defendant; (2) that the act or law under which said accusation was drawn has been specifically repealed by a law passed by the legislature of Georgia in extra session of 1937-1938 providing that it is necessary to obtain permission from the county authorities to operate a tourist camp in counties having a population of from 100,000 to 200,000, and repealing the law of 1937 which provides that such permission must be obtained in counties having a population of upward of 57,000, and the accusation does not allege that Richmond County, Ga., has a population of not less than 100,000 nor more than 200,000 inhabitants, as required by law; (3) that said act under which said accusation is drawn is too indefinite for enforcement because said act or law does not define a 'tourist camp,' and such a term does not carry with it the meaning of a tourist camp; that by the use of the words 'tourist camp' defendant is not apprised of the charge she is required to answer; (4) that said accusation does not set forth with any degree of certainty what offense this defendant is charged with in that it does not describe a tourist camp, merely using the words, 'tourist camp,' and does not apprise the defendant of the offense committed; (5) that the act of 1937, page 624, which was bill No. 430 of the Georgia legislature of 1937, which act became effective on March 30, 1937, and which provides that one establishing, maintaining, or operating a tourist camp, in counties having a population of more than 57,000, and under which this defendant is charged, is unconstitutional for the following reasons: (a) said act violates paragraph 2 of section 3 of article 1 of the constitution of the State of Georgia, which is section 6389 of Park's Civil Code of 1910, which section provides that no law impairing the obligation of contracts shall be passed; (b) that said act violates paragraph 3 of section 1 of article 1 of the constitution of the State of Georgia, which is section 6359 of Park's Civil Code of 1910. which provides that no person shall be deprived of property except by due process of law; (c) that said act violates paragraph 1 of section 10 of article 1 of the constitution of the United States,

which is section 6652 of Park's Code of 1910, which provides that no State shall pass any law impairing the obligation of contracts; (d) that said act violates paragraph 5 of section 3 of article 8, which is section 6688 of Park's Code of 1910, which provides that no person shall be deprived of property without due process of law. Wherefore defendant prays that these her grounds of demurrer be inquired of by the court and that said accusation be quashed." The motion to quash and the demurrers were overruled, and exceptions pendente lite were duly filed. The case proceeded to trial and a verdict of guilty was returned. The motion for new trial was overruled. The case is here on assignments of error on the overruling of the motion to quash the accusation, the demurrers, and the motion for new trial.

The evidence for the State in substance showed that the defendant operated outside the city limits of Augusta, in Richmond County, Georgia, a place named "Dixie Tourist Camp" until sometime during the year before the trial, and that the defendant changed the name to "Dixie Tourist Court;" that the County of Richmond has a population of 73,000 inhabitants according to the last census, and, further, that the commissioners of roads and revenues of Richmond County had passed resolutions assessing an annual license tax of $15 for each guest room or "tourist camp" and specifying certain regulations with which the operator should comply, to be entitled to a license to operate a tourist camp. The place consisted of two or three rows of one-room cabins, about twelve to a row, and the cabins were the same as before the name was changed. The evidence showed that the said Dixie Tourist Court was conducted in an excellent manner, had the reputation of the highest moral environment and law observance, and of being clean and attractive and a safe place for any one's family to lodge. The defendant refused to pay the license fee, contending that she was not subject to the fee for the reason that her place was a "tourist court" and not a "tourist camp." The only showing for the defendant was her statement, which in substance set forth that the defendant went to the Dixie Tourist Court in 1933, then known as Dixie Tourist Camp, that she changed the name from Dixie Tourist Camp to Dixie Tourist Court; that the reason she changed from "tourist camp" to "tourist court" was that if you own a tourist camp you can not belong to the association to which she

belonged, the United Motor Club and the A A A Association; that the change was not made to avoid the tax, but that she did object to being classed as a tourist camp and paying the same rate that they paid; that there was quite a difference between a tourist camp and a tourist court; and that she was hurt to think that the commissioners were trying to throw her in the class with the tourist camps.

We will deal first with the exceptions to the overruling of the motion to quash the indictment and the demurrers, then with the special grounds, and finally with the general grounds. Ground 5 of the demurrer purports to attack the constitutionality of the act of 1937, page 624, because of this alleged attack. On constitutional grounds the case was first carried to the Supreme Court. That court held that the exceptions were not sufficient to raise any constitutional question and therefore the Court of Appeals was the proper court to determine the assignments of error. The Supreme Court thus disposed of ground 5 of the demurrer.

The assignment of error presented by the exceptions pendente lite to the order of the court overruling the defendant's motion to quash the accusation brings into question whether the accusation, having been preferred by W. H. Sherman, instead of the solicitor, is a good accusation under the act creating the city court of Richmond County. Ga. L. 1880-81, p. 574, provides that the solicitor of the city court of Richmond County shall sign the accusation and that the general law of indictment and accusation shall prevail, and § 32 provides that, "In all cases tried upon accusations, the offense shall be therein charged with the same particularity, both as to matter of form and substance, as is required by the laws and rules of criminal pleading to be observed in bills of indictment in the superior courts." The provisions of the act of 1880-1881, pp. 574, 580, with reference to the requisites of an accusation are in consonance with, rather than in exception to, the requisites as set forth in *Smith* v. *State,* 63 *Ga.* 168 (2), as follows: "The requisites of the accusation are only that it shall be in the name of the State and signed by the prosecutor, and that it shall distinctly set forth the nature of the offense charged, the time and place of its commission, the person by whom committed, and the fact that it is based upon an affidavit, referring thereto." In this connection see *Dickson* v. *State,* 62 *Ga.* 583, 590. By reference to the accusa-

tion hereinabove set out, it will be observed that the accusation was signed by the solicitor of the city court, and that it was otherwise sufficiently formal to constitute a good accusation under this act. The court did not err in overruling the defendant's motion to quash the accusation.

Error is assigned, ground 1 of the demurrer, that no cause of action is set out. This assignment is without merit. Ground 2 of the demurrer is based on the allegation that Ga. L. 1937-1938, Ex. Sess., p. 353, repealed Ga. L. 1937, p. 624, and raised the population of counties having authority to regulate the operation of tourist camps in counties having a population of upward of 57,000, to counties having a population of from 100,000 to 200,000. This principle is controlled adversely to the plaintiff in error by the decision in *Adcock* v. *State, 60 Ga. App.* 207 (3 S. E. 2d, 597). Grounds 3 and 4 allege that the words, "tourist camp" are not defined in the act on which the accusation is based, or in the accusation itself, and therefore the defendant is not apprised of the charge she is required to answer. Taking these words in their generally accepted meaning and ordinary significance, as required under Code, § 102-102, providing that "the ordinary signification shall be applied to all words, except words of art, or words connected with a particular trade or subject-matter, when they shall have the signification attached to them by experts in such trade, or with reference to such subject-matter," the words used in the accusation are sufficient to apprise the defendant of the charge against her. Webster's International Dictionary (2d ed.) defines the adjective "tourist," as follows: "Of, pertaining to, suitable for, or serving, tourists; as a tourist agency, inn, tickets, camp, or cabin." Webster's Unabridged Dictionary defines "camp" as "The ground or spot on which huts, tents, are erected for shelter; . . single hut or shelter; . . to camp; to encamp; to lodge in a camp." Webster's Collegiate Dictionary defines "tourist" as "One who makes a tour; one who travels from place to place for pleasure or culture." These grounds are without merit.

Special grounds 1, 2, and 3, of the amended motion complain that the court erred in admitting over objections of defendant resolutions passed by the board of commissioners of roads and revenues of Richmond County regulating tourist camps and fixing license fees for their operation. These resolutions are quite lengthy and we

will not set them out here. The act conferring this duty on the county commissioners makes provisions for such resolutions as were passed by the commissioners of Richmond County and they were admissible for the purpose of showing that the commissioners had complied with the act and that the defendant had violated the criminal laws under said act by refusing to comply with the provisions of the resolutions of the county commissioners. This evidence was pertinent and competent and essential to the State's case. The objections are without merit. Ground 4 assigns error because the court charged the jury as follows: "The State contends that the commissioners of roads and revenues of Richmond County, Georgia, were authorized by the law of Georgia to regulate the operation and maintenance of tourist camps in this county, and that in pursuance of this authority they had a right to refuse to permit the operation and maintenance of a tourist camp, unless their reasonable regulations were complied with." This charge was not error for any reason assigned. We have held that the evidence on which this charge was based was pertinent and the law as given was applicable. Ground 5 is to the same effect on a similar charge referring to the same evidence, and for the reasons given above this ground is without merit.

Ground 6 complains of the following charge: "The State contends that the name of a cabin hostelry on the side of a road for the purpose of taxing or for the purpose of regulation, would be the general group classification, and would not be under this classification that covers an inn, hotel, or hostelry under one edifice in a city. The State contends there was no tax ever levied or license charged against tourist camps, or the classification known as tourist camps, as a permission to do illegal acts, or to violate the law. This, gentlemen, would be against public policy. The State contends, that to permit any one to run a cabin hostelry, under however strict a regulation, without tax and without regulation on the part of the State, or its political subdivision, the county, would be the granting of a franchise or special privilege not consistent with the highest ideals of democracy." This charge is attacked upon the grounds, (a) that it is argumentative, (b) that it expresses an opinion that the defendant was guilty of illegal acts, and (c) that it required the jury to consider public policy. Under the facts of this case the charge, while not entirely free from the criticisms made, does

not require a reversal for any reason assigned. The defendant drew a sharp distinction between the moral atmosphere of a tourist court and a tourist camp, and it was contended by her throughout the case that she was being oppressed by such classification. We construe this particular excerpt from the court's charge as dealing with this particular issue in an effort to instruct the jury that the law recognized no such distinction as the defendant sought to invoke.

It is complained in special ground 7 that the court erred in charging that "If her place is taxable at all it must be placed under some other classification that does not come within the purview of a wayside inn or cabin hostelry or tourist camp." It was further complained in special ground 8 that the court erred in charging "That it is a 'court' and belongs to some organization, private corporation, which has no bearing on any law in any State where they operate, that no corporation by its own acts can change the law of the State, but she contends that the character of her business is so different from the type of business of a tourist camp that she should not be refused permission to operate her business as a tourist court, because hers was not a tourist camp, and that if there is no way to classify herself as something else, that under her constitutional rights she should be permitted to operate without such regulation and without tax." What we have said as to the errors assigned in ground 6 likewise apply to the errors assigned in special grounds 7 and 8.

The charge as a whole was fair, and clearly covered the law as to all issues of fact to be determined by the jury. The evidence as set out above was sufficient to support the verdict, and the judge did not err in overruling the motion to quash the accusation, the demurrers, or the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*